**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| Curt Badger,<br><br>              Plaintiff,<br><br>v.<br><br>Soo Line Railroad Co. d/b/a Canadian Pacific,<br>              Defendant. | Case No. <u>17-cv-470</u><br><br>**COMPLAINT<br>(JURY TRIAL DEMANDED)** |

## INTRODUCTION

1. Plaintiff Curt Badger suffered work-related injuries to his knee due to the negligence of his employer, Defendant Soo Line Railroad Co. d/b/a Canadian Pacific ("Canadian Pacific"). The company responded to Badger's injury report by disciplining him for it and then preventing him from returning to work with the knee brace his doctor prescribed.

2. Pursuant to the Federal Employers Liability Act, 45 U.S.C. §51, *et. seq.* ("FELA"), Canadian Pacific is liable to Badger for his personal injuries sustained while in the course and scope of his employment. Pursuant to the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA"), Canadian Pacific is also liable to Badger for retaliating against him for reporting his injury. Finally, pursuant to the FRSA and the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA"), Canadian Pacific is liable to Badger for refusing to allow him to return to work with the knee brace his doctor prescribed for his work-related injury.

## PARTIES

3. Canadian Pacific is a railroad carrier engaged in interstate and foreign commerce. It is headquartered in Minneapolis, Minnesota.

4. Badger resided in Edgerton, Wisconsin when he was employed by Canadian Pacific; however, when Canadian Pacific refused to return him to work, he was forced to relocate

1

to Arizona.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over Badger's ADA and FRSA claims under 28 U.S.C. § 1331, and jurisdiction over Badger's FELA claims under 28 U.S.C. § 1367, as well as 45 U.S.C. §§ 51-60.

6. Venue is proper under 28 U.S.C. § 1391 because Badger resided in the Western District of Wisconsin when he was injured, Canadian Pacific operates in the Western District of Wisconsin, and the illegal conduct occurred in the Western District of Wisconsin. It is also proper under 45 U.S.C. § 56, which allows bringing a FELA action in a court where the cause of action arose or where the Canadian Pacific does business.

## CANADIAN PACIFIC INJURES BADGER

7. At all times material herein, Badger was working in the course and scope of his employment for Canadian Pacific, and at the time of the incidents described below, all or part of Badger's duties were in furtherance of Canadian Pacific's business of interstate commerce.

8. Badger's right knee began to ache in March of 2014.

9. The ache caused Badger to seek medical care, which he reported to his supervisor.

10. Approximately five months later, on August 20, 2014, Canadian Pacific ordered Badger and other employees to remove old ties.[1]

11. The tools Canadian Pacific provided to Badger were defective, and the manner in which Canadian Pacific instructed him to use them was dangerous.

12. Accordingly, Badger injured the knee in which he previously had an ache.

## BADGER REPORTS CANADIAN PACIFIC'S NEGLIGENCE

---

[1] Ties are the pieces of timber that hold the track to the ground, and they need to be replaced frequently because they rot, etc.

2

13. Though he knew it may make him a target for discipline, Badger immediately reported the injury to his direct supervisor.

14. Badger's supervisor interviewed Badger and the other employees about the incident, had Badger write a statement, and took pictures of the scene. He then took Badger to the hospital.

15. After Badger was treated, his supervisor took him to meet with a claim agent. The claim agent had Badger add to his written statement that his injury was an aggravation of a previously existing injury.

### CANADIAN PACIFIC DISCIPLINES BADGER

16. Pursuant to his union's collective bargaining agreement ("CBA") with Canadian Pacific, Badger could not be disciplined unless Canadian Pacific charged him with a workplace rule violation and held an investigatory hearing (an internal process whereby the company appoints a hearing officer to take testimony from the employees involved in the alleged workplace rule violation)

17. After Badger reported his injury, Canadian Pacific charged him with an undisclosed workplace rule violation. (Exhibit A.)

18. Canadian Pacific then held the investigatory hearing, found against Badger for three vague and overlapping rules, and suspended him for ten days without pay. (Exhibit B.)

### CANADIAN PACIFIC AGAIN TRIES TO DISCIPLINE BADGER

19. Even after suspending him, Canadian Pacific looked for ways to retaliate against Badger. For example, Badger called his union representative and supervisor to ask when he would have to serve the above-referenced suspension, which his supervisor used as reason to accuse Badger of making personal calls during business hours.

20. In fact, Badger made the call while he was waiting in the parking lot of a hardware store for his foreman (who was purchasing work materials).

21. But rather than asking Badger what he was doing when he made the calls, his supervisor accused him of a workplace rule violation. (Exhibit C.)

## CANADIAN PACIFIC INTERFERES WITH BADGER'S TREATMENT PLAN

22. Because his work-related injury continued to cause him pain, Badger's treating physician has ordered him to undergo physical therapy twice per week.

23. In August of 2015, Badger told his supervisor that his treating physician had ordered him to seek treatment and that the treatment was available only during business hours, which meant he had to miss work. Badger also told his supervisor that he would schedule his appointments as early in the day as possible to minimize the time he would be away from work.

24. Despite knowing the treatment had been ordered by Badger's treating physician, Badger's supervisor told him he would be disciplined if he was late to work because of his treatments.

## CANADIAN PACIFIC AGGRAVATES BADGER'S INJURY

25. On November 5, 2015, Canadian Pacific again placed Badger in an unsafe working environment.

26. Accordingly, he aggravated his knee injury when he stepped in a hole in a railroad tie.

## BADGER AGAIN REPORTS CANADIAN PACIFIC'S NEGLIGENCE

27. Though he knew it may make him an even bigger target for discipline, Badger immediately reported the aggravation to his direct supervisor.

28. Badger's supervisor required Badger to fill out forms and then offered to take him to a physician of Canadian Pacific's choosing. Badger declined, telling the supervisor that he preferred to be seen by his doctor.

29. The following Monday, November 9, 2015, Badger was seen by his doctor, who ordered him to rest for one week and to wear a hinged knee brace upon his return to work.

**CANADIAN PACIFIC AGAIN INTERFERES WITH BADGER'S TREATMENT PLAN**

30. The next day, Canadian Pacific told Badger that he could not wear a hinged knee brace at work. Canadian Pacific provided no reason for not allowing Badger to wear the knee brace.

31. Upon learning Canadian Pacific would not allow Badger to return to work with a hinged knee brace, Badger's doctor arranged for Badger to be fit with a hinge-free brace, which is similar to what players in the National Football League wear. Nevertheless, Canadian Pacific would not allow Badger to return to work.

32. To make ends meet, Badger was forced to relocate to Arizona, where he could find employment.

33. Over a year later, after Badger filed an FRSA complaint with OSHA and an ADA charge with the EEOC, Badger told Canadian Pacific that he was also going to sue them for its negligence and his resulting injury. Upon being told that it may be liable for the wage loss Badger suffered due to his injury, Canadian Pacific reversed course and offered to reinstate Badger, leg brace and all.

34. Badger declined the offer, fearing that after he again picked up his family and moved halfway across the country, Canadian Pacific would find some other reason to again remove him from service.

**CANADIAN PACIFIC'S RETALIATORY MOTIVE**

35. Congress has explicitly said that "[t]he underreporting of railroad employee injuries has long been a particular problem, and railroad labor organizations have frequently complained that harassment of employees who reported injuries is a common railroad management practice."

*Araujo*, 708 F.3d at 159 (citing *Impact of Railroad Injury, Accident, and Discipline Policies on the Safety of America's Railroads: Hearings Before the H. Comm. on Transportation and Infrastructure*).

36. Railroads' motive to discourage workers from reporting injuries includes that it is exempt from Workers' Compensation, which means it is liable to employees whose injuries are caused by its negligence, and the agency responsible for enforcing railroad safety laws—the Federal Railroad Administration ("FRA")—uses the number of reported injuries to determine where it should send its inspectors. *See*, *e.g.*, *Barati v. Metro-N. R.R. Commuter R.R. Co.*, 939 F. Supp. 2d 143, 148 (D. Conn. 2013) (quoting the testimony of the former head of the FRA's Office of Safety).

37. Canadian Pacific also ensures that supervisors have a personal motive to discourage their subordinates from reporting workplace injuries by maintaining an incentive compensation plan whereby it pays its managers a yearly bonus based, in part, on the number of FRA-reportable injuries employees report (with less injury reports translating to higher bonuses).

38. Canadian Pacific maintains such a compensation plan despite Congress having expressed concern as early as 2008 "that some railroad supervisors [have] intimidated employees from reporting injuries to the FRA, in part, because their compensation depended on low numbers of FRA reportable injuries within their supervisory area. *Araujo*, 708 F.3d 152, 161 n. 7 (citing *Impact of Railroad Injury, Accident, and Discipline Policies on the Safety of America's Railroads: Hearings Before the H. Comm. on Transportation and Infrastructure*).

### CANADIAN PACIFIC'S RETALIATION WAS PURSUANT TO ITS COMPANYWIDE PRACTICES AND POLICIES

39. The rules Canadian Pacific alleges Badger violated apply companywide.

40. It is a particularly common and companywide practice at Canadian Pacific to use these and its other rules, which are vague and essentially incorporate reporting an injury as a part of

6

the rule's violation, to justify retaliation against employees who report injuries and then prevent them from following the treatments plan prescribed by the physicians who treat them for their injuries. *See, e.g., Bjornson v. Soo Line R. Co.*, No. 14-cv-4596, 2015 WL 5009349, at *1-2 (D. Minn. Aug. 24, 2015);

41. Despite these and other numerous FRSA violations, Canadian Pacific has not disciplined a single supervisor for retaliating against employees for engaging in FRSA-protected activity.

## **CAUSES OF ACTION**

## **VIOLATIONS OF 45 U.S.C. §51, *et. seq*.**

42. The FELA provides that Canadian Pacific is "liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51.

43. On August 20, 2014 and November 5, 2014, Canadian Pacific negligently failed to furnish and provide Badger a reasonably safe place to work, reasonably safe conditions for work, reasonably safe appliances for work, reasonably safe equipment for work and reasonably safe methods of work.

44. Canadian Pacific's August 20, 2014 and November 5, 2014 negligence injured Badger's knee.

45. The injuries and damages sustained by Badger were caused, in whole or in part, by the Canadian Pacific's negligence, in violation of the FELA, when Canadian Pacific failed to provide Badger with a reasonably safe place to work causing, Badger to suffer severe, permanent, and painful injuries to his right knee and his body as a whole.

46. Furthermore, the above-described acts and omissions of Canadian Pacific include Canadian

Pacific's violation of one or more safety rules, regulations and statutes, including Canadian Pacific's own rules, which constitute strict liability against Canadian Pacific.

47. On account of said injuries, Badger has undergone extensive medical care and treatment and will be required to seek medical treatment in the future. Even with such treatment, the strength, use, and function of Badger's right knee, related body as a whole, and general health and strength have been permanently weakened, diminished, and impaired. As a result, in addition to the physical pain, mental anguish, and lost capacity for the enjoyment of life he has and will continue to suffer, Badger has lost and will continue to lose earnings, and has incurred and will continue to incur expenses for medical treatment.

## STRICT LIABILITY

### 57.    VIOLATIONS OF 49 U.S.C. §§ 20109(a)(4)

48. The FRSA prohibits railroad carriers from demoting, suspending, reprimanding, or in any other way discriminating against an employee for engaging in protected activity. Protected activity includes "notify[ing], or attempt[ing] to notify, the railroad carrier . . . of a work-related personal injury . . . ." 49 U.S.C. § 20109(a)(4).

49. Badger engaged in protected activity by:

- telling his supervisor he aggravated his knee pain while working;
- telling the claim representative he aggravated his knee pain while working; and
- submitting a written statement.

50. Canadian Pacific knew Badger had engaged in protected activity when it twice charged him with workplace rule violations.

51. Canadian Pacific took adverse actions against Badger when it twice charged him with workplace rule violations and suspended him for one of those alleged violations.

8

52. Badger's protected activity was a contributing factor in Canadian Pacific's decision to take adverse actions against him. In fact, the adverse actions against Badger resulted directly from his protected activity.

**VIOLATIONS OF 49 U.S.C. §§ 20109(c)(2)**

53. The FRSA prohibits railroad carriers from "threaten[ing] discipline to[ ] an employee for . . . following orders or a treatment plan of a treating physician . . . ." 49 U.S.C. § 20109(c)(2).

54. Badger engaged in protected activity by telling his supervisor he intended to seek bi-weekly treatment pursuant to the treatment plan of his treating physician. Badger also engaged in protected activity by telling Canadian Pacific that his physician ordered him to wear a knee brace.

55. Canadian Pacific knew Badger had engaged in protected activity when it told him he would be disciplined if he was late because of treatments pursuant to the treatment plan of his treating physician and when it refused him to return to work while wearing a knee brace.

56. Canadian Pacific took adverse actions against Badger when it told him he would be disciplined if he was late because of treatments pursuant to the treatment plan of his treating physician and when it refused to let him return to work with a knee brace.

57. Badger's protected activity was a contributing factor in Canadian Pacific's decision to take adverse actions against him. In fact, the adverse actions against Badger resulted directly from his protected activity.

**VIOLATIONS OF 42 U.S.C. § 12112(a)**

58. Badger is disabled within the meaning of the ADA.

59. Badger is a qualified individual within the meaning of the ADA.

60. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

9

conditions, and privileges of employment."

61.     Section 12112(b)(5)(A) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."

62.     Canadian Pacific discriminated against Badger on the basis of disability when it terminated him.

63.     Because Canadian Pacific violated 42 U.S.C. § 12112, Badger has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Badger is also entitled to attorneys' fees and costs incurred in connection with these claims.

64.     Canadian Pacific committed the above-alleged facts with reckless disregard or deliberate disregard for Badger's rights and safety. As a result, Badger is entitled to punitive damages.

## **REQUEST FOR RELIEF**

65.     Badger requests that the Court find Canadian Pacific acted in direct violation of the ADA, FELA, and FRSA.

66.     Badger further requests that the Court order Canadian Pacific to:

- clear and/or expunge any record of misconduct by him regarding the incidents described herein;

- allow Badger to return to work with a knee brace;

- pay to him an award for pain and suffering in an amount in excess of $75,000.00;

- pay to him an award for past and future medical expenses in an amount in excess of $75,000.00;

- pay to him an award for compensatory damages arising from loss of income and benefits in in an amount in excess of $75,000.00;

- pay to him an award for garden-variety emotional distress in an amount in excess of $75,000.00;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorneys' fees; and

- pay to him an award for $250,000 for punitive damages for each violation of the FRSA.

- pay to him an award for $300,000 for punitive damages for each violation of the ADA.

67. Badger further requests that the Court order judgment against Canadian Pacific for all other relief available under the ADA, FELA, FRSA and such other relief as the Court deems just and equitable.

DATED: June 19, 2017

**NICHOLS KASTER, PLLP**

_____
Matthew H. Morgan (MN # 304657)
Nicholas D. Thompson (MN # 389609)
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Facsimile: (612)338-4878
morgan@nka.com
nthompson@nka.com

**ATTORNEYS FOR COMPLAINANT**